UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTHA DICKEY-WILLIAMS,

       Plaintiff,                          Case No. 12-cv-12220

v.                                    HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**ORDER OVERRULING OBJECTIONS AND ADOPTING REPORT AND
RECOMMENDATION** (document no. 13), **GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT** (document no. 12), **DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT** (document no. 9), **AND DISMISSING CASE**

      The Social Security Administration ("SSA") denied Plaintiff and claimant Martha
Dickey-Williams' application for Supplemental Security Income in a decision issued by
Administrative Law Judge ("ALJ") Deborah Rose on October 26, 2010. After the SSA
Appeals Council declined to review the decision, Dickey-Williams appealed to this Court.
The Court referred the matter to a U.S. Magistrate Judge, and the parties filed cross
motions for summary judgment. On April 30, 2013, the magistrate judge issued a Report
and Recommendation ("Report") suggesting denying Dickey-Williams' motion and granting
the Commissioner for Social Security's ("Commissioner") motion. Report, ECF No. 13.

      Dickey-Williams filed three timely objections to the Report. She argues the Report
improperly dismissed the ALJ's failure to apply the treating physician rule to the opinions
of Dr. Clague; the Report did not properly consider the opinions of psychologist Ross
Thayer; and the report overlooked the ALJ's failure to discuss whether Dickey-Williams'
migraines affected her residual function capacity. Objection at 2-7, ECF No. 14.

      Civil Rule 72 does not require the Court to hold a hearing when reviewing a

magistrate judge's findings. Fed. R. Civ. P. 72; *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980)
(holding 28 U.S.C. § 636 did not require a hearing for de novo review of a magistrate's
findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 09-14919, 2012 WL
1622897 (E.D. Mich. 2012). After examining the record and considering Dickey-Williams'
objections de novo, the Court concludes that her objections do not have merit. Accordingly,
the Court will adopt the Report, grant the Commissioner's motion for summary judgment,
deny Dickey-Williams' motion for summary judgment, and dismiss the case.

## STANDARD OF REVIEW

Reports and recommendations for dispositive motions issued by a magistrate judge
are reviewed pursuant to Civil Rule 72(b). The district judge referring the motion is only
required to perform a de novo review of the magistrate judge's findings if the parties "serve
and file specific written objections to the proposed findings and recommendations." Fed.
R. Civ. P. 72(b)(2). Here, Dickey-Williams objected to three findings made by the Report
as to the ALJ's decision. Those findings will be reviewed de novo by the Court.

Judicial review of decisions by the Commissioner is authorized by 42 U.S.C. § 405(g).
A reviewing court only examines an ALJ's determination to see if it is "supported by
substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r
of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a
scintilla of evidence but less than a preponderance; it is such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health
& Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Therefore, a review of the
Commissioner's decision gives great deference to an ALJ's findings. A court should not
replace an ALJ's judgment of the facts with its own view of the evidence unless an ALJ's

2

finding is completely without support. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence."). If an ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

## BACKGROUND

Martha Dickey-Williams was fifty years old at the date of the most recent administrative decision. Her previous work history included various jobs with an automotive manufacturer for twenty years. Report at 2. During this work, she claimed she had developed underlying overuse syndrome, or repetition strain injuries, of her upper extremities due to the nature of her job. According to her, she was first diagnosed with bilateral carpal tunnel syndrome, as well as left DeQuervain's tendinitis, in February of 1991. Pl's Mot. for Summ. J. at 3, ECF No. 9. Over the subsequent years, she returned to several doctors with similar symptoms and diagnoses, including doctors retained by her employer. Her work responsibilities were modified in part because of these diagnoses. *Id.* at 6. Eventually, Dickey-Williams went into disability retirement due to her medical issues from her employer on November 18, 2005. She then filed an application for disability insurance benefits on May 19, 2008, alleging a disability onset date of November 18, 2005. On September 2, 2010, ALJ Rose held a video hearing with Dickey-Williams. Dickey-Williams was present in Lansing, Michigan, and ALJ Rose presided from Tulsa, Oklahoma; a Vocational Expert also appeared at the hearing. On October 26, 2010, the ALJ concluded Dickey-Williams was not disabled, and denied her claim. The Social Security Appeals Council declined to review her decision, and Dickey-Williams filed suit in this Court.

I.    The ALJ's Decision

When applying for disability benefits, a claimant has the burden to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F2d 680, 683 (6th Cir. 1992). In reviewing an application, an ALJ must examine the evidence using the five-step evaluation process specified by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520. The "claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). If the claimant can establish an entitlement to benefits at any step, the inquiry ends and the claimant is entitled to benefits.

First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Here, the ALJ found Dickey-Williams had been, for the purposes of the regulations, medically "laid off" from her employment at the claimed date of the disability onset, and  had not engaged in substantial gainful activity since then. ALJ Decision at 3.

Second, the ALJ must determine whether the claimant suffers a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Here, the ALJ found Dickey-Williams suffered from severe impairments of tendonitis, "status post carpal tunnel release of thumb," and depression. ALJ Decision at 3.

Third, the ALJ must determine whether the claimant can prove the impairment "meets or equals" an impairment category found in the Social Security listing at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. If a claimant meets one of these categories, the claimant is considered disabled regardless of age, education, or work experience considerations. 20 C.F.R. §

404.1520(d). Here, the ALJ found Dickey-Williams did not have an impairment or combination of impairments that met or equaled one of the listings found in either Appendix 1, section 1.01, musculoskeletal impairments, or section 12.04, mental disorders.

To meet or equal a 1.01 listing, a claimant must suffer from one of several different types of disorders, which generally result in an inability to ambulate effectively, or an inability to perform fine and gross movements. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.01-1.02. Although the ALJ acknowledged that Dickey-Williams had back, shoulder, arm, and hand pain, and was limited in her work, the ALJ also noted the medical evidence did not support "spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or a verbal fracture." ALJ Decision at 4. Nor did the medical evidence show fracture of an upper extremity, lumbar spinal stenosis, or the inability to ambulate effectively. Thus, under the guidelines of 1.01, the ALJ concluded Dickey-Williams did not meet or equal any listed musculoskeletal impairment.

To meet or equal a 12.04 listing, a claimant must meet both "paragraph A" and "paragraph B" criteria. Although the ALJ determined Dickey-Williams met paragraph A criteria of a severe mental impairment, namely a "depressive disorder not otherwise specified," *id.* at 5, the ALJ also concluded she did not meet the criteria of paragraph B, which requires showing at least two of the following symptoms:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, ¶ B. The ALJ found that Dickey-Williams only had moderate restrictions in daily living; mild difficulties in social functioning; moderate difficulties in maintaining concentration; and no documented episodes of decompensation.

ALJ Decision at 6.

Listing 12.04 may also be met if the claimant alternatively meets "paragraph C" critieria. The ALJ found that Dickey-Williams did not meet the criteria of paragraph C, which requires a finding of:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> > 1. Repeated episodes of decompensation, each of extended duration; or
> >
> > 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> >
> > 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.04, ¶ C. Here, the ALJ found the medical record did not establish a chronic affective disorder of at least two years that caused more than a minimal limitation of her ability to do basic work activities; or in combination with the remaining three factors. ALJ Decision at 6.

Fourth, if, as here, the claimant cannot meet or equal one of the listed entries, the ALJ will make a determination of the claimant's "residual functional capacity" to engage in work, and the claimant must show she cannot engage in work she has performed in the past. In making this determination, the ALJ will consider all the relevant evidence. The ALJ must first conclude there is an underlying medical impairment capable of producing the claimant's symptoms, and then make a judgment as to the intensity, and limiting effects of the symptoms on the claimant's ability to work. The ALJ uses this judgment to determine

6

a claimant's residual functional capacity. 20 C.F.R. § 404.1520(e).

The ALJ concluded Dickey-Williams had the residual function capacity to perform a "restricted range of light and sedentary work" which encompassed the ability to lift or carry ten pounds occasionally; stand or walk for six hours in an eight-hour workday; the inability to do any climbing of ladders, ropes, or scaffolds; occasional working at or above the shoulder level; occasional gross and fine manipulation; and simple, routine tasks. ALJ Decision at 7. In making this determination of her physical and mental limitations, the ALJ considered a wide variety of evidentiary sources, including Dickey-Williams' testimony; the physical limitation opinions of Dr. Alan Clague, Dr. Neal Bente, Dr. D. Biscardi; the mental limitation opinions of Dr. John Gallagher, and Ross Thayer. *Id.* at 9-11.

Fifth, the ALJ must determine, based on the residual function capacity and the claimant's age, work experience, and education, whether the claimant can engage in other work that is available in the national economy. 20 C.F.R. § 404.1520(f). The ALJ found that Dickey-Williams was unable to perform any of her past work, defined as a data entry clerk and a receiving clerk. The ALJ also concluded that transferability of work skills from her previous work was irrelevant here. Considering this background, and Dickey-Williams' residual function capacity, the ALJ found Dickey-Williams was qualified to engage in light work with additional limitations. The Vocational Expert testified that given these factors, possible unskilled and light exertional jobs included counter clerk and school bus monitor, both of which existed in substantial numbers in the regional economy. ALJ Decision at 13. The ALJ then concluded that Dickey-Williams was "not disabled" as defined by the Social Security Act. *Id.*

The Report recommended granting summary judgment to the Commissioner, finding

7

that the ALJ's decision was supported by substantial evidence. Report at 26. Pursuant to 28 U.S.C. § 636(b)(1), Dickey-Williams filed an objection to the report on April 2, 2013; on April 10, 2013, the Commissioner filed a response.

## DISCUSSION

I.   Application of the Treating Physician Rule to Dr. Clague

Dickey-Williams' first objection to the Report disagrees with the Report's discussion of the ALJ's consideration of Dr. Clague's opinions. The ALJ did not give all of the opinions of Dr. Clague, one of Dickey-Williams' treating physicians, substantial or controlling weight; the Report concluded the ALJ had substantial evidence to support this decision. Dickey-Williams argues the Report misapplied the treating physician rule by not requiring the ALJ to clearly explain the reasons for not according Dr. Clague's position greater weight.

A.   Legal Standards

Title 20 C.F.R. § 404.1527 specifies how an ALJ must evaluate medical opinion evidence. The ALJ must adhere to these standards as a matter of due process. *Wilson*, 378 F.3d at 544. An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544.

8

Normally, an ALJ's failure to follow this rule is an error which may constitute a lack of substantial evidence."[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527(d)(2) requires." *Id.* at 545. But this error is not always dispositive, and may be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 547) (internal citation omitted). But the "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544).

B. <u>Dr. Clague's Assessment</u>

Dr. Allan Clague, a clinical neurologist, examined Dickey-Williams several times between 2008 and 2010. Administrative Record ("A.R.") at 332, 463, 534, 550. For each of Dr. Clague's examinations on June 4, 2008, May 2, 2008, September 3, 2008, December 9, 2008, March 12, 2009, June 18, 2009, March 16, 2010, and July 30, 2010,  Dr. Clague prepared a multi-page letter explaining the results of his examination and his medical opinions as to Dickey-Williams' condition. Dr. Clague's reports are generally consistent; for example, the most recent opinion, on July 30, 2010, states, among other things, that Dickey-Williams continued to suffer from an "underlying overuse syndrom [repetition strain injury (RSI)] of both upper extremities from prolonged repetitive muscular activity . . . 1)

9

bilateral carpal tunnel syndrome . . .2) deQuervain's syndrome (extensor tenosynovitis) left thumb; 3) bilateral epicondylitis; 4) bilateral periarthritis of the shoulders; and 5) traction/stretch/compression injury to the brachial plexuses: left and right." A.R. at 541. Dr. Clague also concluded that Dickey-Williams' condition was a direct result of her employment on an assembly line; that her prognosis was poor as "continued repetitive use of the upper extremities will only result in further progression"; and that a "conservative medical management" treatment was appropriate. He also, as Dickey-Williams points out, concluded that "I never foresee her being able to return to any form of gainful productive employment." *Id.* at 542.

C. Analysis

Dickey-Williams' objection to the Report has less to do with substantive objections to the ALJ's decision than with the procedural objections. Citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), Dickey-Williams argues that when refusing to give controlling weight to a treating source, an ALJ must give

good reasons for discounting the weight given to a treating-source opinion. . . . These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. This procedural requirement ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Id.* at 376 (internal citations and quotation marks omitted). Dickey-Williams argues that the ALJ here failed to do so, only stating perfunctorily that she did "not give significant weight to Dr. Clague's assessment because the particulars of the assessment are not supported by the whole of the evidence and are not well supported by objective or other evidence." ALJ Decision at 20. Dickey-Williams points out that in *Gayheart*, the Sixth Circuit held in

10

that case an ALJ's similar statement that a treating source's opinions "are not well-supported by any objective findings" was "ambiguous" at best and insufficient to be a good reason. *Gayheart*, 710 F.3d at 377.

As a threshold matter, the Court must determine what precisely the ALJ chose to credit or discredit. As Dickey-Williams correctly states, Dr. Clague examined her several times over a two year period and authored several medical opinions regarding her physical state. On August 12, 2010, Dr. Clague, in response to a request from Dickey-Williams' counsel, also authored a medical source statement (physical) listing his assessment of Dickey-Williams' functional capacities. This source statement is the source of most of Dr. Clague's claimed limitations. A.R. at 551. In the ALJ's Decision, when the ALJ chose to give less than controlling weight to "Dr. Clague's assessment," it is clear that the ALJ is only speaking to the specific medical source statement and its opinions as to Dickey-Williams' residual function capacity, not the entirety of Dr. Clague's medical opinions.

To the extent the ALJ chose to give less than controlling weight to Dr. Clague's overall conclusions that he will "never foresee [Dickey-Williams] being able to return to any form of gainful productive employment," A.R. at 340, and his subsequent conclusion that she is "totally and permanently medically disabled," A.R. at 554, the ALJ was warranted in disregarding these conclusions. "[T]he ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r*, 283 F.App'x 336, 341 (6th Cir. 2008). "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 157 (6th Cir. 2009); *see* 20 C.F.R. §§ 404.1546(c), 416.946(c). Nor is an ALJ "required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Id.* And an "ALJ does not

11

improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Id.*

Thus, examining the ALJ's choice to only give less than significant weight to Dr. Clague's medical source statement, and his assessment of Dickey-Williams' residual function capacity therein, the Court concludes that the ALJ had substantial evidence to give the source statement the weight she did; and that even if the ALJ did not fully comply with § 404.1527, it is harmless error because the Court was capable of engaging in meaningful appellate review of her decision.

First, the ALJ did give a reason for why she chose not to accord Dr. Clague's medical source statement controlling weight: she determined that "the particulars of the assessment are not supported by the whole of the evidence and are not well supported by objective or other evidence." At its core, the regulations at least facially permit an ALJ to give an opinion less than controlling weight if an opinion is inconsistent or not well-supported. *See* 20 C.F.R. § 404.1527 (controlling weight is granted if an opinion is both "well-supported" *and* is "not inconsistent with the other substantial evidence"); *see, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

Contrary to Dickey-Williams' objection, the ALJ's decision was more specific than the "ambiguous" statement referred to in *Gayheart*. In *Gayheart*, the phrase "not well-supported by any objective findings" was considered ambiguous because, in context, it was unclear to what evidence "objective findings" referred to — was it non-objective findings, or merely objective findings that did not support the opinion? *Gayheart*, 710 F.3d at 377. Here, in contrast, the ALJ was more specific: Dr. Clague's medical source statement was not accorded controlling weight because (1) the whole of the evidence did not support Dr.

12

Clague's statement, (2) objective evidence did not support Dr. Clague's assessment, and (3) other evidence did not so support either.

It is true the ALJ did not immediately enumerate specifically what evidence conflicted with Dr. Clague's medical source statement. It is also true the general phrase that an opinion is "not supported" or "inconsistent," without more, may not always be sufficient. But this is not a case in which the Court could not determine, under the principles of "meaningful [appellate] review of the ALJ's decision," *see Blakley*, 581 F.3d at 409, what evidence the ALJ relied on to substantiate her conclusion of less than controlling weight. And this is not a case in which the ALJ failed to consider at all a treating source, or discredit a treating source entirely. *Cf. Blakley*, 581 F.3d at 408. The ALJ thoroughly examined Dr. Clague's opinion. And the substantial evidence the ALJ relied on not only existed, *cf. Blakley*, 581 F.3d at 410 (6th Cir. 2009) ("substantial evidence alone does not excuse non-compliance"), but was discussed at length in the ALJ's Decision.

Here, the medical evidence the ALJ relied on — as the Report, the response to the objection, and the Court's examination of the ALJ's decision and the Administrative Record make clear — include: the internal contradiction between Dr. Clague's medical source statement, and his prior medical opinions, ALJ Decision at 4 (citing A.R. at 468), *see Coldiron v. Comm'r of Soc. Secy.*, 391 F.App'x 435, 440 (6th Cir. 2010) (internal inconsistency reason to afford less than controlling weight to treating source), as well as the fact Dr. Clague's medical source statement and opinions did not rely on electrophysiological examinations; the medical opinions and evidence from Dr. Steven Harwood, ALJ Decision at 4 (citing A.R. at 488) and Dr. David Hing, ALJ Decision at 4 (citing A.R. at 265), who had examined Dickey-Williams, *cf. Gayheart*, 710 F.3d at 377

13

("conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors"); as well as the contradiction between Dr. Clague's statement and Dickey-Williams' own testimony, ALJ Decision at 9 (citing A.R. at 597). This is sufficient substantial evidence to make Dr. Clague's medical source statement "just one more piece of evidence for the [ALJ] to weigh," *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Therefore, substantial evidence existed to support the ALJ's decision; the ALJ was within her "zone of choice" when she chose not to give Dr. Cleague's medical source statement controlling weight. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). *See generally Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.").

Even assuming § 404.1527 required the ALJ here to more specifically detail which pieces of contradictory evidence discredited Dr. Cleague's medical source statement (setting aside the fact the ALJ did enumerate such substantial evidence in the decision), and acknowledging that under § 404.1527, the ALJ may have properly discussed in greater length the weight she did assign to Dr. Cleague's statement, the Court finds that any such error is harmless under the standards of *Wilson v. Comm'r of Soc. Sec.* Failure to comply with the regulations constitutes harmless error if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though [he] has not

14

complied with the terms of the regulation." *Watters v. Comm'r of Soc. Sec. Admin.*, 12-2454, 2013 WL 3722099 (6th Cir. July 17, 2013) (quoting *Cole*, 661 F.3d at 940).

Here, Dr. Cleague's opinion is not patently deficient, nor did the ALJ adopt in whole Dr. Cleague's residual function capacity conclusions. But the Court concludes the ALJ nevertheless met the goals of § 404.1527. The Court understood that the ALJ gave only some weight to Dr. Clague's medical source assessment, and understood what evidence the ALJ used to conclude the medical source assessment was inconsistent with other evidence. The Court also understood the nature and extent of Dr. Clague's treatment and assessment, as the ALJ discussed it at length, and how Dr. Clague's statements were inconsistent with both his own prior medical evaluations, and the other medical opinions of fellow treating physicians. Thus, the Court was able to conduct a meaningful appellate review of the ALJ's decision, and the goal of § 1527(d)(2) has been met.[1] *See, e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F.App'x 462, 472 (6th Cir. 2006). Accordingly, the Court will overrule this objection.

## II.   Consideration of Psychologist Ross Thayer

Dickey-Williams' second objection to the Report disagrees with the Report's conclusion that there was substantial evidence to support the ALJ's decision to assign less than controlling weight to Ross Thayer's opinion. She argues that the Report improperly considered Dickey-Williams' mental state in the context of "Paragraph B" of listing 12.04, which determines whether a plaintiff meets or equals a listing, when the ALJ should have applied a broader standard when determining residual function capacity. Dickey-Williams

---

[1] The Court warns, however, that failure to more fully adhere to procedural regulations should not become a routine practice of the Commissioner.

also contested the Report's decision to favor Dr. Gallagher's finding of no psychological

issues over Thayer's findings Dickey-Williams indeed suffered from these issues multiple

times. Finally, Dickey-Williams argues the ALJ Decision and the Report mischaracterized

a report authored by Dr. Biscardi.

A. <u>Thayer's Opinion</u>

Ross Thayer, a psychologist working for the Herrick Outpatient Behavioral Health

center, authored a mental impairment questionnaire regarding Dickey-Williams on August

13, 2010, in anticipation of the filing of an application for benefits. A.R. at 543. In his

questionnaire, Thayer stated that Dickey-Williams was positive for "chronic depression,

anxiety, with poor stress management ability;" that Dickey-Williams exhibited a wide range

of signs and symptoms of psychological problems, such as emotional instability, persistent

disturbances of mood or affect, catatonic or other grossly disorganized behavior, and

similar symptoms; that she was "unable to meet competitive standards" in many areas of

work performance; and that she had none or mild restrictions of activities of daily living, but

also apparently suffered at least four or more episodes of decompensation within a 12

month period, each of at least two weeks duration. A.R. at 543-547.

B. <u>Analysis</u>

The ALJ chose to give "minimal weight" to the questionnaire because the "Extreme

degree of limitation assessed is not corroborated in the contact notes and is not consistent

with the whole of the credible probable evidence." ALJ Decision at 11. The ALJ noted that

the contact notes for Dickey-Williams' prior treatment, both with Thayer and others, did

reflect stress, affective disturbance, anxiety, and depression from life circumstances such

as the instant litigation, job loss, and parenthood; but also that there was no corroboration

16

for the "marked difficulties in maintaining social functioning, or the four or more incidents of decompensation within a twelve-month period." *Id.*

After examining the Administrative Record, the Court concludes the ALJ had substantial evidence to justify assigning the Thayer questionnaire little weight. First, the Thayer questionnaire was internally inconsistent; a finding of no or only mild restrictions in everyday living is incompatible with four or more episodes of decompensation within a 12 month period, each of at least two weeks duration. *See Coldiron*, 391 F.App'x at 440 (internal inconsistency reason to afford less than controlling weight to treating source). This alone would be sufficient to assign the Thayer questionnaire less than controlling weight. The remaining evidence considered by the ALJ included Dickey-Williams' direct testimony to the ALJ and to various social workers in the course of her treatment, ALJ Decision at 5 (citing, e.g., A.R. at 33, 341, 593); the examination and reports of Harold Bilotta and Dr. James Steyaert which, among other things, assessed Dickey-Williams with a similar, but not identical, set of limitations from what Thayer diagnosed, *id.* (citing A.R. at 416); *cf. Gayheart*, 710 F.3d at 377 ("conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors"); the report of reviewing psychologist Dr. John Gallagher, who completed a separate functional limitation assessment, *id.* (citing A.R. at 435, 437); other Herrick Outpatient reports, *id.* (citing A.R. at 594); and the continued description of Dickey-Williams by multiple examiners, including Dr. Clague, as presenting "pleasant and cooperative manner," *id.* (citing A.R. at 332, 416, 463, 483).[2] This is sufficient substantial evidence to make Dr. Clague's medical source

---

[2] It is true that Dickey-Williams did report hallucinations and delusions during her sessions with Thayer, but this does not alter the fact that the ALJ had substantial evidence to discount these reports and choose both to give little weight to Thayer's final report, and

statement "just one more piece of evidence for the [ALJ] to weigh," *Bauer*, 532 F.3d at 608, and, therefore, substantial evidence existed such that the ALJ was within her "zone of choice" when she chose not to give Thayer's questionnaire controlling weight. *Felisky*, 35 F.3d at 1035.

As for Dickey-Williams' objection that the Report misapplied the legal standard, this is unavailing. It is true the consideration for residual function capacity and the consideration for meeting or equaling a listing in section 12.04 are separate. But this would not alter the conclusion that Thayer's report was internally inconsistent when discussing multiple episodes of decompensation in one part, and finding mild or no restrictions in everyday living in another part. Nor is there anything preventing the ALJ from considering the same sources of evidence in both a meet/equal analysis, and a residual function capacity calculation. Finally, even excluding Dr. Biscardi's report, the ALJ still referred to substantial evidence sufficient to discredit Thayer's questionnaire. The ALJ relied on substantial evidence in not giving Thayer's questionnaire controlling weight; the fact it was the same evidence relied on in determining Dickey-Williams did not meet or equal a 12.04 listing is irrelevant. The Court will overrule this objection.

III.   Consideration of Dickey-Williams' Migraine Headaches

Dickey-Williams' third objection is that the ALJ failed to consider her migraine headaches in formulating his report, and that the Report erroneously claimed it was not an error to do so. She argues that the ALJ is required to discuss this symptom when formulating her residual function capacity. The objection is also unavailing. First, the Court

---

to not incorporate the alleged limitations in Dickey-Williams' residual function capacity. *See generally* A.R. at 594 (reports showing no hallucinations or delusions).

finds the Report accurately stated the law when holding that an ALJ must consider all of a claimant's symptoms and impairments, severe or non-severe, in formulating a decision (as long as some severe impairment exists). Report at 26 (citing *Anthony v. Astrue*, 266 F.App'x 451, 457 (6th Cir. 2008)). And the fact that the ALJ did not specifically discuss Dickey-Williams' migraines is not dispositive in and of itself. *See Kornecky*, 167 F.App'x at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party). As long as the final decision incorporates all of the claimant's impairments — and here, the ALJ stated she did consider all of Dickey-Williams' "subjective symptoms and complaints" — the fact an ALJ did not specifically state every piece of evidence or every symptom is not an error. It is true that migraines are noted in the Administrative Record as conditions Dickey-Williams was suffering from. But the primary contention that Dickey-Williams' migraines were disabling was her own testimony. A.R. at 56. And the ALJ stated she found Dickey-Williams' statements regarding the "intensity, persistence, and limiting effects of the limitations [were] not credible" to the extent inconsistent with the other evidence. The ALJ's assessment of a claimant's credibility "are to be given great weight." *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542 (6th Cir. 2007). And as discussed above, the ALJ had the occasion to consider a great deal of medical evidence in formulating Dickey-Williams' residual function capacity. Dickey-Williams has not shown, other than by pointing to its textual absence, how the ALJ would have altered her residual function capacity assessment and on what evidence that decision would be based. *See Willis v. Comm'r of Soc. Sec.*, 12-10011, 2013 WL 718506 (E.D. Mich. Feb. 27, 2013) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)) ("[T]he burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination."). In other words, the Court finds substantial evidence supported the ALJ's residual function capacity, and Dickey-Williams has not demonstrated, with respect to the migraines, any evidence to show this was in error. The Court will overrule this objection.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Report and Recommendation (document no. 13) is **ADOPTED** over Dickey-Williams' objections.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (document no. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (document no. 12) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: 9/30/2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on 9/30/2013, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager

20